CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 15 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JENNIFER L. MUTERSPAUGH,<br><br>  Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>  Defendant. | Civil Action No. 7:10CV00272<br><br>**MEMORANDUM OPINION**<br><br>By: Honorable Glen E. Conrad<br>Chief United States District Judge |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Jennifer L. Muterspaugh, was born on June 9, 1976, and eventually completed her high school education. She also completed two years of college and has obtained certification as a licensed practical nurse. Ms. Muterspaugh has worked as a nurse, and as an assistant manager at a department store. She last worked on a regular and sustained basis in 2005. On May 16, 2007, Ms. Muterspaugh filed applications for disability insurance benefits and supplemental security income benefits. Plaintiff alleged that she became disabled for all forms of substantial gainful employment on June 2, 2005 due to seizure disorder, chronic back pain, migraine headaches, foot

and ankle pain, knee problems, and depression. She now maintains that she has remained disabled to the present time. As to her application for disability insurance benefits, the record reveals that Ms. Muterspaugh met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See gen., 42 U.S.C. §§ 416(i) and 423(a).

Ms. Muterspaugh's claims were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated April 17, 2009, the Law Judge also determined that plaintiff is not disabled. The Law Judge found that Ms. Muterspaugh suffers from a seizure disorder, migraine headaches, obesity, status post left knee surgery, degenerative joint disease, sleep apnea, fibromyalgia, and severe depression with anxiety. Because of these conditions, the Law Judge ruled that plaintiff is disabled for her past relevant work. However, the Law Judge found that Ms. Muterspaugh retains sufficient functional capacity for a limited range of sedentary work activity. The Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, this Administrative Law Judge finds that the claimant has the residual functional capacity to perform a range of sedentary exertional work as defined in 20 CFR 404.1567(a) and 416.967(a). Claimant can lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk for 2 hours out of 8, and sit for 6 hours out of 8. Claimant is limited to tasks requiring no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling. She cannot climb ladders, ropes or scaffolds, or work around hazardous machinery, at unprotected heights, or on vibrating surfaces. She cannot be exposed to excessive background noise. Since April 2, 2008, she has been limited to simple, routine, repetitive unskilled tasks, and can tolerate no more than occasional interaction with the general public.

(TR 15). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge ruled at Ms. Muterspaugh retains sufficient functional capacity to perform several specific sedentary work roles

2

which exist in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that plaintiff is not disabled, and that she is not entitled to benefits under either federal program. The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Muterspaugh has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. As found by the Administrative Law Judge, Ms. Muterspaugh suffers from a variety of physical and emotional problems. Some of her conditions, such as her obesity and musculoskeletal difficulties, are related. However, many of her problems do not appear to be directly connected, and are addressed by different physicians. In her evaluation of the medical record, the Administrative Law Judge considered each of plaintiff's impairments individually and concluded that none of the conditions is so severe as to render Ms. Muterspaugh disabled for all forms of work activity. The Law Judge also undertook to consider whether plaintiff's impairments, considered in combination, equal an impairment of disabling

3

severity. In this context, the Law Judge relied in substantial measure on reports from two nonexamining state agency medical specialists. However, the court believes that the record is not sufficiently developed so as to support a finding that plaintiff's conditions, considered in combination, do not equal a listed impairment. Indeed, the court concludes that the synergistic effect of plaintiff's multiple medical and emotional problems has not been addressed in a manner consistent with the administrative procedures for such an inquiry. Accordingly, the court finds "good cause" for remand of this case to the Commissioner for further development and consideration.

Ms. Muterspaugh has suffered from a seizure disorder for much of her life. She has been treated for left knee problems and migraine headaches since at least 2004. Ms. Muterspaugh underwent left knee arthroscopic surgery in 2005. She has continued to experience left knee problems. While her doctors believe that she is a candidate for anterior cruciate ligament reconstruction, the surgical procedure has not been conducted because of her obesity. In July of 2007, Ms. Muterspaugh was treated for problems in her left ankle. On that occasion, her orthopaedic specialist indicated that she was to undergo evaluation for possible gastric bypass surgery in order to relieve her morbid obesity.

Dr. Frank M. Johnson, a nonexamining state agency physician, conducted a review of the medical record with report dated July 25, 2007. Dr. Johnson eventually concluded that Ms. Muterspaugh suffers from a primary diagnosis of partial complex seizures with complications due to morbid obesity and mild dyspnea. Dr. Johnson felt that Ms. Muterspaugh possesses residual functional capacity for up to light levels of functional activity. Dr. Joseph Leizer, a nonexamining state agency psychologist, produced a report on July 26, 2007. After reviewing the existing medical

4

record, Dr. Leizer concluded that Ms. Muterspaugh does not experience anxiety, depression, or insomnia.

The difficulty in this case is that most of the critical medical reports were developed after the record reviews performed by Dr. Johnson and Dr. Leizer. While Ms. Muterspaugh eventually proceeded with the gastric band surgery, she did not lose any appreciable amount of weight. The treating orthopaedic specialist reported that her weight loss was not sufficient so as to permit performance of the left knee reconstruction. Ms. Muterspaugh's weight has exceeded 300 pounds throughout the period of time considered by the Commissioner. In 2008, plaintiff sought intervention by a mental health specialist, who offered a diagnosis of recurrent, moderate, major depressive affective disorder with a GAF of 40.[1] Later in 2008, Ms. Muterspaugh was given a left knee brace to aid in maintaining stability. She continued under the care of a mental health specialist. Following a referral to a rheumatologist, plaintiff was said to be suffering from fibromyalgia syndrome. In February of 2009, plaintiff's gynecologist recommended a total vaginal hysterectomy.

Additional medical reports were submitted to the Commissioner some time after issuance of the Administrative Law Judge's decision, but prior to the action of the Social Security Administration's Appeals Council. Ms. Muterspaugh's treating orthopaedic specialist, Dr. Kerry Donnelly, reported that plaintiff's left knee could not be properly braced because of her obesity. He opined that she was going to continue to have problems with her knees unless she obtained significant weight loss. He again noted that reconstructive surgery of her left knee was not feasible

---

[1] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A score of between 31 and 40 is indicative of some impairment in reality testing or communications or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 48 (4th ed. text rev. 2000).

5

at her current weight. Ms. Muterspaugh was admitted to a psychiatric facility on September 9, 2009, with hallucinatory symptoms and suicidal ideation. On September 29, 2009, Dr. Donnelly opined that Ms. Muterspaugh is totally disabled. Dr. Charles Judy, plaintiff's family physician, submitted a report on October 5, 2009 in which he also opined that plaintiff is disabled due to musculoskeletal discomfort, obesity, schizoaffective disorder, and generalized anxiety disorder.

Given the progression of several of plaintiff's physical and emotional difficulties, and in light of the new developments in her case, the court believes that the Administrative Law Judge's reliance on the reports of the state agency medical specialists in determining the existence of medical equivalence, is not supported by substantial evidence. As recognized under Social Security Ruling 02-1p, the simple fact is that plaintiff's morbid obesity greatly alters her medical picture, such as to require particular diligence in assessing the issue of medical equivalence. Stated differently, and as clearly exhibited by the medical record in Ms. Muterspaugh's case, morbid obesity greatly affects the treatment and the physical impact of medical conditions which in and of themselves might not be so severe as to contribute to an overall disability. As noted by Dr. Donnelly, the treatment of Ms. Muterspaugh's knee is extremely complicated, given her extreme obesity. Reconstructive surgery, which would otherwise be the appropriate course in a case such as Ms. Muterspaugh's, is not possible. Moreover, proper bracing of the knee has proven difficult. As for plaintiff's emotional problems, the medical record strongly suggests the existence of a symbiotic relationship between her weight problems and her emotional difficulties.

Social Security Ruling 02-1p, ¶ 7, makes reference to 20 C.F.R. §§ 404.1526(c) and 416.926(c) in determining the existence of medical equivalence in a case involving morbid obesity. Under 20 C.F.R. §§ 404.1526(c) and 416.926(c), it is provided as follows:

6

> What evidence do we consider when we determine if your impairment(s) medically equals a listing? When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding. We do not consider your vocational factors of age, education, and work experience (see, for example, § 404.1560(c)(1)). <u>We also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner.</u> (Emphasis added.).

As noted above, in the instant case, the state agency physicians who spoke to the issue of medical equivalence, provided reports at a time well before many of the significant developments in Ms. Muterspaugh's case. In the months after Dr. Johnson and Dr. Leizer submitted their opinions, plaintiff attempted to undergo a surgical procedure for her obesity, which ultimately proved to be unsuccessful. Her left knee problems worsened, and her treating orthopaedic specialist determined that normal remedial measures could not be employed in her case because of her girth. Plaintiff developed worsening emotional problems, and eventually required psychiatric hospitalization. Finally, plaintiff's treating family physician and treating orthopaedic specialist have both concluded that she is unable to engage in any sustained work activity. Unfortunately, the state agency medical specialists, who offered the only professional assessment as to the issue of medical equivalence during the period of medical treatment considered by the Law Judge, did not have the opportunity to consider these reports in rendering their opinions.

Under such circumstances, the court must conclude that the only reasonable course is to remand this case to the Commissioner so that input may be received from a medical advisor or medical consultant in determining the synergistic effect of plaintiff's impairments. As noted above, in a case involving morbid obesity, such input is critical in determining the existence of medical equivalence. The court finds "good cause" for remand of this case to the Commissioner for further

consideration of plaintiff's obesity and the complications caused by this condition in terms of plaintiff's other physical and emotional impairments.[2]

For the reasons stated, the court finds that plaintiff has established "good cause" for remand of this case to the Commissioner for further development and consideration as outlined above. See 42 U.S.C. § 405(g). If the Commissioner is unable to decide this case in plaintiff's favor on the basis of the existing record, the Commissioner will conduct an additional administrative hearing at which both sides will be allowed to present supplemental evidence and argument. As indicated above, if another hearing is conducted, the court recommends that the Commissioner receive input from a medical advisor as to the issue of medical equivalence. An appropriate order of remand will be entered this day.

The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 15th day of April, 2011.

Chief United States District Judge

---

[2] As an alternate basis for remand, Ms. Muterspaugh contends that the Commissioner did not give adequate consideration to the medical evidence submitted during the interim between the issuance of the Administrative Law Judge's opinion and the adoption of that opinion as the final decision of the Commissioner by the Social Security Administration's Appeals Council. See Alexander v. Apfel, 14 F. Supp. 2d 839, 843 (W.D.Va. 1998). However, the court does not believe that there is cause for remand under Alexander. Indeed, a review of the record indicates that, to its credit, the Appeals Council addressed at least one of the new medical reports. (TR 5).